Mr. Bogart, we'd be happy to hear from you. Thank you, Your Honor. May it please the court. We're grateful for the opportunity to discuss this matter today. My name is Nathan Bogart. I represent the petitioner, Mr. Carlos Escobar Gomez. It's an honor to be here and I hope we can address the issues of importance to the panel. In the removal case of Mr. Escobar, the immigration judge whose decision was basically just upheld by the Board of Immigration Appeals, denied his application for asylum and withholding of removal. The sole issue decided by the immigration judge and the board was whether Mr. Escobar's particular social groups were defined with particularity. It was a very narrow holding. At no point did the board or the IJ before consider whether the proposed particular social groups were socially distinct or composed of immutable characteristics. So any proposed particular social group must meet each of those three elements. That they're immutable, particular, or and socially distinct within the society in question. Well the only the only question before us is particularity. Is that right? That's absolutely correct. Yes, Your Honor. So we don't get to the question of the immutable characteristic. We don't talk about distinct within the society in question because the board didn't address those. And so the only thing we have to determine is whether it was correct on the issue of particularity. That's correct, yes. We agree wholeheartedly. And so really when we get to... Do we even know that this individual was a member of the proposed group? We don't actually, Your Honor. That was never decided by the board or the board. Well, I mean it is an odd thing that we... I think it's the first case I've seen where it's unclear whether the individual is even a member of the group that's proposed. And I would think that you would have the... You bear the overall burden. I would think you have the burden of indicating that or at least saying I'm a member of this particular group. And I mean it looks like me. I have my real, my real doubts. I don't know what murders you witnessed or when or what have you. It's just this statement. It looks like we're sort of ruling on sand here. You're not even a member of the group. Right, no. Do you see the problem? I do see the problem. And the problem really goes back I think to the trial and really how the Immigration Court, you know, analyzed this issue is they really just honed in on that issue of particularity. They never got to the issue of whether or not he was a member of the particular social group. Well, that's fine, but I would think you bear the overall burden. And I'm just, you know, I don't want to belabor the point, but I feel like I'm being put in an odd posture when I'm... It seems to me an easy enough thing for you to establish the group you want us to rule on by saying that, you know, here's the murder I witnessed. Yes, I can understand that, Your observation. I think that, you know, certainly from Mr. Escobar's perspective and what he argued below was that he was a member of that particular social group, particularly a particular social group of witnesses of a murder in El Salvador. And he did present testimony and evidence indicating that he had witnessed a specific murder and that he had been threatened because he had witnessed that murder. So, you know, our position... I mean, that was a case in pretty much similar where we're going. And we even pointed out that case that, you know, the question of whether or not he was a member went to the issue of whether he was actually in that social group, not to the particularity of it. So, it's been a situation we've dealt with, almost the same kind of situation where you don't know if he's a member. And I agree with Judge Wilkinson, it's odd, but we've done it. And we recognize that that in Amalia. Yes, Your Honor, I would agree that Amalia is similar in that circumstance that, you know, it hadn't really been addressed whether he was a member. And the main issue in that particular decision was the particularity. Well, that's why I wanted to focus it because it is a narrow issue. And I, you know, it seems like to me, I don't know why the board wouldn't go out and do the rest of it and bring it to us. But they decided on that narrow issue on it. And we made it clear that the question of whether you're in the group is different from the question of particularity. Yes, they're two very different questions. Particularity is all about... The question of whether you're in the group, I have a problem with it, but I think it's only the beginning of my problems. And the particularity problem, you know, particular is the sort of an antonym of general. And this just seemed to be a group that sprawled all over the place. It includes people in circumstances that are wildly variable. One of the basic questions I have is that it includes both people who reported a murder and those who didn't. And if you look at the persecution, people are far less likely to be persecuted if they didn't report the murder in any way. And in fact, the gangs or whatever, people may never know who witnessed the murder. It may be completely anonymous situation. Nobody else in the world or in El Salvador may even know if this individual actually witnessed a murder. And so it seems to be a lot of people who never reported witnessing a murder with those who did. You're throwing apples and oranges together, and that's only the beginning because it includes citizens of El Salvador and those who are not. You could be a witness to something on television and be a member of the group. And I don't know where we have ever taken a group that's this big and open-ended and sprawling and satisfies a particularity requirement. But if the word particular means anything, it means something less than the open-ended kind of quality of this proposed group. Yeah, thank you for clarifying that, Your Honor. And I think that, you know, really when you get to the analysis of particular social groups in general, you know, the board has established this three-pronged analysis. And what I think the Amaya Court in particular tries to do is... I'm having some hard time following you on that. What do you mean? If Judge Wilkerson clarified this, then your case is pretty much going down the tube. He's asking for a response to the way he has put this. Not thank you for clarifying it, because if you do that, then we can just stop right now. I think you mentioned Amaya is similar, at least from my perspective, it looks like it controls. And that's where the answer to those questions would lie. Particularity, but persecution deals with nexus. And size is, at least you said in Amaya, is not really material insofar as the question of particularity. So Amaya really controls the outcome of this case. But I think you need to be more specific in addressing Judge Wilkerson's concerns, because those are concerns that, you know, on the surface, when you look at the words, I agree. When you look at particularity, it just doesn't make any sense from a common sense. But from an immigration perspective, in the way the case law has been interpreted, it takes on almost a term of art, from my perspective. So I think you need to go there and address it more specifically, what Judge Wilkerson is putting to you, because it's a good question. Sure. So particularity is really more about self-limiting features. And what we're concerned about is whether or not the lines around the group are sufficiently clear to know who is a member and who is not. The size of the particular social group isn't necessarily going to be what determines particularity. No, but if they're widely differing circumstances, and so many of those circumstances don't link up, you can call this a nexus question, you can call it anything, but you can't ultimately get away from the ultimate requirement that the asylum statute was passed to prevent persecution, and to provide a safe harbor for those who have been persecuted. And I can't recall where we have taken a group, a particular social group, and said it satisfies the particularity requirement. In fact, our own decision in Zelaya Beholder, the court rejected as a particular social group, a group consisting of young Honduran males who refused to join the Mara Salvatrucha 13 gangs, have notified the authorities of MS-13's harassment tactics and have an identifiable tormentor within MS-13. And even given the fact that that is 10 times more specific and particular than the proposed social group here, it seems to me, you know, we'd be just running roughshod over our presence if we held something as general as this to be a particular group. All you'd have to do is witness shoplifting instead of murder. You could say somebody went to witness shoplifting, or somebody witnessed fraud, or somebody witnessed any kind of crime, and that would be a particular social group under the proposal that you've advanced. And it just, we're making immensely of our precedent, we're making immensely of the statute, if we go that, that far. That's really going a lot, that's really going a lot. I mean, for example, the people in the group would include the murderer himself or the murderers or accomplices to the murder. I mean, I've actually seen a murder in El Salvador from a completely different country and just watched it on TV, and nobody even ever knew that we had witnessed a murder. I mean, it just could include almost anyone, and the kind of things we found particularly in social groups have been like members of a particular family or something like that, but they've had some outer boundary in order to qualify as a particular social group. There has to have been some outer boundary, and I don't see the outer boundary here. Sure. So, you know, when it comes to these outer boundaries, I think that the Zelaya case is a particular social group that isn't particular, and that's primarily because it's... Well, wait a minute. You have a particular social group that isn't particular. Does that run afoul of the statute by concession? No, I think that the Zelaya, the proposed group in Zelaya is a good example of a case that isn't particular. It's an extremely long group with several modifiers that are extremely vague, using terms such as young, using terms such as harassment tactics. What you ought to do is read the concurrent opinion in Zelaya, which was concurred in by a separate judge, another judge, which made it a majority opinion, and that concurrent opinion said specifically persecution witnesses against gangs are sufficiently particular. So, you know, it wouldn't necessarily be a PSG, but it might satisfy particularity, and that's the only question before us, and that is a matter of jurisdiction that we're dealing with. I'm concerned as to how much you've really paid attention to Amaya on this case here, because that case looks to me to be on all fours in terms of where we go with this question here from a legal perspective. And then as you analyze this question as to what the board did, again, you know, there are other things the board can look at, but the board only focused on particularity. It doesn't end the the other two may come into place, the socially distinct aspect of it, the whole business of nexus and all that. That's not before us, and that's the, you know, when the board makes a narrow interpretation, a narrow statement of this on particularity, we're dealing with a jurisdictional situation here, and so there's a lot more to be done, and I think many of the concerns that Judge Wilkerson raised are quite valid. They're just not before us from my perspective, at least when you look at Amaya, when you look at the concurrent opinion, which is in fact the majority opinion, and because it was joined by one of the judges there, so it too is the majority opinion there, and that's what you really need to pay attention to. Also, Mr. Bogart, the reason the board rejected your petition on the basis of particularity is because the particularity ground was so obvious and straightforward, and a lot of times, you know, there's a lot of dissatisfaction with the board, and I realize that, but actually sometimes the board can get something right, and they took as an agency all the easiest and least disputable ground, and as I say, when you have a group that includes people who've been whose perpetrators have been dead for decades, and people who never reported murder, they're in no danger of persecution. You could call it all a matter of nexus. That's all a matter of nexus. No, particularity is a requirement, and you have to read the particularity requirement in line with the other prohibited bases, which are race and religion and other kinds of things, and they all, every prohibited basis in the asylum statute has at least some arguably definable out of boundary, and this is too diffuse. Thank you. At any rate, Judge Rand, do you have some further questions at this point? No, I don't have any questions, Judge, but I do want to make it clear, at least from the perspective of this case, and maybe when we hear the other side, that Amaria is the case that really controls here. It's a case that came down after the briefing in this case, so it is instructive on what we're dealing with. It  is too diffused to be particular, and Amaria makes it clear that even with this difficult question of ascertaining exactly whether or not he's a member, it doesn't go to the particularity, and particularity goes to jurisdiction, and that's, I think, what the narrowness, but I do want to appreciate where Judge Wilkerson is going, just from the perspective I'm reading Amaria is those are not issues before us, and you're right. The board does get things right quite often, but in Amaria, specifically, the panel made clear we are, you know, we're going to assume there's Chevron deference here on this in that particular case on it, so it gave the board a due regard for it, but nonetheless reached that result on it, so I think we are just bound in this world by Amaria, and I'll be interested to hear how the other side articulates it. Judge Floyd, would you like to have any? I have no questions. Let me, let's hear from your opponent here, Mr. Fiorino. Good morning. May it please the court, Paul Fiorino, can you hear me okay? Yes. If you can at any time, please let me know. I've been told that my microphone is a little bit weak, and I apologize for appearing audio only today. I was having some glitches with my video. To start off, to address Judge Wynn's question, we respectfully think that Amaria does not control this case, and that it's distinguishable. Referring to the concurring opinion, the concurring opinion levers its concurrence on the reasoning in the Ninth Circuit. You're talking about the concurring opinion in the Zio case? Or in Amaria? In Amaria. I'm referring to that, and it refers to Crespin Valadares, which is a Ninth Circuit case, and in the Crespin Valadares, the particular social group was defined as the family members of those who actively oppose gangs in El Salvador by agreeing to be prosecutorial witnesses. I don't know of a concurring opinion in Amaria. I'm trying to understand that. As I understand, I remember that case that Judge Qualibon wrote, it just concurred, and Judge Richland just said it, but I don't remember there being a concurring opinion in Amaria. I think you're talking about the Zio case. That was a case a good colleague, Judge Floyd, wrote that concurring opinion, but that concurring opinion was joined by another judge, which in effect made it a majority opinion for Zio. That's why I pointed out, in terms of the particularity, when you look at the language of that concurring opinion, it's not a concurring opinion. It's a majority opinion because it is joined by another one of the three judge panels, so it's a two-to-one decision on that. Yeah, I understand, Your Honor. If I can get back to why Amaria does not control this case. Yes. In Amaria, the particular social group was former Salvadoran MS-13 members, and in that decision... Sound just as innocuous and unidentifiable as saying witnesses of a murder in El Salvador. That's why I say it seems like the same situation. No, it's not. In fact, it seems even more so former members of it. I mean, how do you determine that? Well, what the panel in Amaria said is that the means of becoming a former member is irrelevant. Either you're a member or you're a former member, and that is clear. But getting back to some of the observations that Judge Wilkerson made... But the means of becoming a witness to a murder in El Salvador is fairly straightforward, too. Try to imagine, Your Honor, a football stadium or a soccer stadium with thousands of people, and on the football pitch, one of the coaches shoots and kills the referee for making a bad call. You've now created an entire particular social group, all the way from the players immediately close to the actual murder to people way up high in the nose. Good point. But Amaria says size doesn't matter. It is immaterial. But the counsel on the other side said it's not relevant, or it's something you shouldn't consider. But Amaria makes it clear. It's immaterial. Well, I'm not saying it's the size. I'm saying it's the vagueness, as Judge Wilkerson pointed out. What is a witness? Is a testifying witness? Is a witness a prosecutorial witness? Is a witness a defense witness? Is the witness to a murder in El Salvador a Salvadoran? Or is it a person visiting El Salvador? Is it a person who witnessed a murder on television? Or is it even a witness who heard about the murder who could be called to testify in court? Now, imagine taking the same thing in Amaria of a former gang member and doing the same thing you just did, and trying to determine what it is. Go through that same line of questioning. Is he one of this? Is there someone who does that? That's not what they did. I mean, I'm sensitive to where you're going with it, but I'm telling you, Amaria has pretty much locked this case in. I disagree, Your Honor. And in this case, the board relied on Zelaya in its decision making. It didn't rely on matter of WGR as the board did in Amaria. And in Zelaya- The problem with Zelaya is that concurrent opinion is a majority opinion. And it too- I'm not relying on the concurrent opinion, Your Honor. I'm relying on the majority opinion- Both of them are majority opinions. That's what I'm trying to say. The concurrent is a majority opinion. It's joined by another judge, just like the first one is. The majority opinion is that. So it's called a concurrent opinion, but it's really a majority opinion. Well, one of the differences that the panel observed about in Zelaya was that in Crespin Valadares, there was an additional limiting factor of family membership, which added certain particularity that was logical and relevant to the case. And in Zelaya, they attempted to make the social group more particular by talking about whether the victim is victimized by one particular gang member or not. And the panel said that the concept that a person who is victimized by one gang member more than any other gang member serves to particularize all such persons into a targeted social group is nonsensical. So what the panel did in Zelaya, the case which the Board is relying on here, is it analyzed the logical relevance of what the distinction was. And even in that case, it found that the attempted further distinguishing the case had no logical relevance, and it didn't serve to make the particular social group any more particular for the purposes of asylum, of a social group. You know, in this situation, if this is the particular social group, I have difficulty envisioning anything that wouldn't be a social group. I think we've read the word right out of the statute. Everything would be, I just don't think the Supreme Court's going to put up with that or anything close to it. I agree, Your Honor. I agree with that. And that's why we think the Board's decision in this case is correct and should be affirmed, and the Court should deny the petition for review. And it may ultimately be correct, and the Supreme Court may do that, but we are bound by the decisions of this Court. And I'm telling you this, when you look at the Zelaya case, it is right there at the bottom. It tells you exactly what to do. Your Honor, this Court is also bound by Zelaya, the case which the Board relied on in this case. Zelaya is no less persuasive and authoritative than Amaya is. And I don't read it as being inconsistent because, as I said, when you had a concurrent opinion, what you've essentially done is expanded majority opinion on it. Everything that's written is the panel. So to just look at the majority where you had the three judges agree to it and ignore what a concurrent opinion said, which expanded on what the majority said, that's the whole opinion. But I think we can go back and forth, and I could just say what's said here, too, that you got a stadium full of people, and that's a lot of folks. But I'm telling you that the law, in terms of this specific issue that's before us, is pretty clear in Amaya. And we may read it differently, and may ultimately be that the Supreme Court might decide it's going to be differently, but I think we're bound by the law of this circuit and interpret it. And if there's a conflict, then maybe we need to get an en banc determination to settle this conflict. Maybe, it's always with some that I disagree with my good friend and colleague, but I don't see Amaya as being at all controlling here because Amaya involved a volitional act at one time to join a particular group with violent and retributory characteristics. And this doesn't involve any volitional act at all. It can be somebody who just happened upon a murder when driving along the street. Violence is regrettably endemic in El Salvador. And there was no act to join any member of a group. There was no affiliation with a group or blood tie with a group the way there is with family members, which are particular social groups. But to me, a volitional decision to join a particular group is different from somebody driving down the street who happened to see nobody even know saw a murder, or in fact, it's just odd, almost a silliness to say that the particular group includes the murderer himself or herself. That just cannot be. It has no relationship to any of the other prohibited bases. Is the asylum statute really meant to protect, as far as particularity is concerned, someone who is committing a homicide? I mean, you could make a particularity, you could make a particular group out of this by narrowing it to people who had reported the murder, and there would be some kind of public record of that, which would make them, I think, more vulnerable to retribution, or you could narrow this group, reporting it one way, you could narrow this group in a number of ways, and make it particular. But this is presented to the board, and it's broadened, and most have used more. This is, I mean, to my way, it's just unprecedented, and I know. Your Honor, I think that I have said what I need to say. But so it's clear for the counsel when you address that, just so you know my position and the way I read it, I do not think volitional act is required at all here, and I would like to hear, do you think it's required? And Amaya emphasized particularity as a line drawing. That's the only question here. So when you get into questions of witnesses, I mean, even when you look at whether it's a former gang member, wouldn't you think that a witness of a murder would be more protected than the members of a gang? So that's the purpose of a particularity. But the question I want you to address, because Judge Wilkinson brings it up, what's the significance of volitional act insofar as determination of particularity? Your Honor, volitional act isn't relevant for all here. And what says that? Because you said it's not for all, but what case says that volitional act is relevant insofar as particularity, or tell me where in Amaya that is recognized? Well, like I said, I'm not relying on Amaya. I'm relying on Zelaya. And in Zelaya, the identified a specific gang member, and because we have identified harm from a specific gang member, we've drawn a line. And the court said that's irrelevant. It's not just a matter of drawing lines. The particularity has to have some logical relevance to the claim. And in this case, the claim is that because he witnessed a murder, and because the murderer knows who he is, and the murderer threatened him, he will face harm. But the social group isn't just witnesses to a murder in El Salvador. So is nexus relevant to particular determination of particularity? Is nexus? No, no, Your Honor, it has to have a logical, there has to be a logical reason, a logical connection to the claim. If you look at Amaya, the particular social group was former MS-13 gang members. Okay, the MS-13 is relevant because they're the ones who are going to hurt him. The former is relevant because he left the gang and they don't like it when you leave the gang. So I need you to help me just one thing, if you give me just one thing to help on it. Tell me that language in Zelaya you are relying on. Tell me specifically, because I'm having some difficulty. You keep saying I'm not relying on Amaya, I'm relying on Zelaya, but I want to know what you're relying on. What is the language you say controls the outcome of this case from that case? Okay, Your Honor, if you could give me a second here. Well, first off, Zelaya's proposed social group does not have the self-limiting feature. What page of the opinion? I want to read that, but if you just point me specifically to the part of it. 166. 166 and 167. And the language you are relying on that says what? It says Zelaya's proposed social group does not have the self-limiting feature of the family unit, which feature was critical to our holding in Crespin Valadares that the proposed social group in that case had particular and well-defined boundaries. Okay. Then the court goes on to say the fact that Zelaya's conduct in resisting recruitment, including complaining twice to the police, adds little to the particularity equation in the face of the common sense proposition that MS-13 would look unfavorably upon anyone who's complained about its harassment tactic to the police. So in that case, the petitioner attempted to further delimit his social group with an essentially irrelevant distinction. Yes, he drew a line. Yes, he made it more distinct, but the distinction he drew was irrelevant to his particular claim. And so what I'm arguing is that when you look at particularity and how a particular social group is defined, the limiting factors have to have some logical relevance to the claim that the noncitizen is advancing. Otherwise, they are irrelevant. And in this case, witnesses to a murder in El Salvador do not contain sufficient delimiting factors to define his social group to make it relevant to his claim. What are you talking about? How do you define his claim? Excuse me, your honor? What do you mean by his claim? His asylum claim generally? His asylum, his claim that the murderers are going to kill him because he saw them kill his friend. He was a direct witness and he was contacted specifically. But one thing I would say when my friend Judge Wynn said, well, does volitional choice have any role to play? Where is that? Well, you won't find a dictionary of, you know, relevant terms of particularity and, you know, there's no all-inclusive list of things that might or might not contribute to particularity. But what I think we get at by talking about volitional choice is that there is some obligation on the part of a particular group to supply limiting factors. When you supply limiting factors, you make it more and more particular. And the point here when you don't have those limiting factors, and what is upsetting is that this group could have been so easily passable if just a meager effort had been to narrow the universe, even marginally, and not just have this, you know, this complete sprawl. And we were talking about this, and I agree with you that Zelaya, and that quote you read, my friend Judge Wynn was very relevant. In Zelaya, it was not, it was more particular by a multiple of 10. And the court said no. That isn't sufficient. And I don't want to repeat myself, but if this group is particular, then I have trouble envisioning any group that would not be. Yes, your honor. That's right. Without, I always am happy to have him. Judge Wynn had something to ask. I will not speak further. Judge Wynn? No, I have nothing. I have nothing further, your honor. Your honor, I'm out of time, but if I could just sum up, please. To pick up where Judge Wilkinson left off, yes, this particular social group is extremely vague and broad. It encompasses huge swaths of the Salvadoran society, as even Petitioner concedes. Murder is endemic in El Salvador. Further, Petitioner also concedes in his opening brief that witnesses to a crime itself is too broad, and the board's rejection of that was reasonable. I think he said that on page 11 of his brief. To the extent that the board's rejection of witnesses to a crime is reasonable, we would say that witnesses to a murder in El Salvador is likewise reasonable, because the social group still, for reasons I've discussed and for reasons that Judge Wilkinson has illustrated, is way too broad. To hold it as a matter of law that this social group satisfies particularity would essentially eliminate the entire requirement of particularity. Do you disagree with the holding in Amaya? No, I do not disagree with the holding of Amaya, but as I've said- So you believe it is a correct decision insofar as Amaya and the application of that case is a full force in terms of this circuit? Well, it depends on what we're talking about in Amaya, because in Amaya, the court took the board to task for three reasons, and the board's reasoning in that case and its reliance on WGR, a factor not present in this case, I think was sound. What I'm saying is that Zelaya controls this case, and to hold that witnesses to a crime in El Salvador is a particular social group would essentially write that entire requirement out of the statute. So we would ask- Well, I understand fully why you want to focus on Zelaya. I mean, before Zelaya and after it, in Amaya, we only emphasized that our only question in particularity was boundaries of the group. I mean, Zelaya does make a statement there, but I see why you want to focus on it. But we have this latest pronouncement here, and a pronouncement that conforms where this court had gone previous to this Zelaya case. But even the language with which you indicate there, again, as I point out, Zelaya is not just what you read as the majority opinion. The majority opinion includes both that and the concurrent opinion. But I understand your point. Mr. Fiorina, let me ask you this question. In the problem that's created here is that the immigration judge and the BIA did not consider the other two factors which could have helped alleviate the problem that we're arguing about on particularity here. So why should it not be sent back to- for them to consider the other two factors, as well as the particularity, and then see where the chips fall? Simply because, Your Honor, if he fails on particularity, he fails entirely. He could have- he could show social distinction. He could also show immutability. But if he doesn't have also particularity, his social group claim fails. And he's also waived CAT protection. So the only issue on the board is asylum and withholding. And in order to get either asylum or withholding, he has to show particularity. So there's- if the court decides against him on the issue of particularity, there's no need to send it back. But if you did send- it did send it back, and don't deciding those other two factors actually work as a filter or as a narrowing of the particular social group? Well, they could help. But in this case, if the court- the only reason the court should send it back- and it would have to, by the way- would be if the court finds that the board erred as a matter of law and finds that this social group is particular. Then it would have to go back for the board to consider whether the social group is socially distinct and whether it's immutable. And so- but if the court- as a matter of judicial economy and expedience, if the court decides that, as a matter of law, this social group witnesses to a murder in El Salvador is not sufficiently particular, there's no need to send it back. Because the board would be bound by that holding, and it would be pointless to consider the other two factors. Judge Floyd, would you like to ask some additional questions? No, no, sir. All right. Mr. Bogart, you've got some rebuttal time. I'd be happy to hear from you in rebuttal. Thank you, Your Honor. So yeah, we would agree that this is a very narrow issue. When it comes to particularity, we're really just worried about whether the lines have been drawn clearly and in a way that's understandable. And from our position, that's the case here. Murder is a very specific crime that's understood. People generally know what murder is. People generally know what it means to be a witness. We know where the murder occurred because it occurred in El Salvador. Those lines are bright. Now, that group could include in several different hypotheticals several thousand people, but that doesn't mean the lines themselves are not drawn clearly. What are you saying? That we know what it means to be a witness? Generally speaking, yes. Well, no, we don't. We don't know whether it's just somebody who viewed something or, you know, I can be a witness to a dog walking down the street. Um, but that term witness is used for a great many things. Um, that's, that's the problem is, you know, we complain about vagueness. I think it's a burden. I'm just ultimately with the individual who has proposed the social group to make it particular. And as I say, this would have been easy to make more particular in a way that related to the want to place myself in a position where people are going to come after me and retaliate against me. And it would have been easy to resolve that problem, but it wasn't resolved. It was put, you know, put in a situation where we're asked to make an extraordinarily broad holding where all the ends of justice about people who are the targets of violence in El Salvador, the ends of justice could have been satisfied so easily. Instead of presenting to the board and the court something that is this broad and this diffuse and is going to have, I think, all kinds of unfortunate ramifications down the road. That's not, that's not difficult. It could have been narrowed and it could have been crystallized. If we deal with vagueness problems all the time, and this one, this particular group is not only diffuse, it has a vagueness problem and vagueness is disfavored in the law. So, this is what occurs to this extent. Anyway, I want to give you the final time so that you can sum up your argument. That's okay, your honor. Thank you. So, really, just to summarize, you know, our position is that the lines are clear, that it's, we're using understandable terms, that adding additional modifiers would not necessarily help. It might help if you were to get into a social distinction analysis or an immutability analysis, but they don't necessarily help with whether or not we know someone could fit within the definition of this group or not. And that the board should have made the particularity finding and then gone on to the other factors of a particular social group. We would ask that it be remanded for that purpose. So, what factors should the board have considered in ruling on this particularity that they did not? Well, they never really got into the discussion of how murder might be different from the more generalized word crimes that were part of the first proposed group. And so, Mr. Fiorano was absolutely correct. We did, in our briefing, concede that it was reasonable for the board to find the first particular social group was not particular. Because crimes is just huge. I mean, the definition of crime varies from country to country, jurisdiction to jurisdiction, but murder is much more specific. And the board never really addressed how that might impact things. In fact, it just said, for these same reasons, we found the first particular social group to not be particular. The second proposed group is also not particular. Well, I think it's going to be hard, to be honest, given all the different obstacles, it's going to be hard to bring this particular claim across the finish line. But at any rate, I feel like I've gone too long. Mr. Bogart, I gave you opposing counsel extra time. Do you want a few minutes to just summarize what you want to say? I don't believe so, Your Honor. I believe that the lines of disagreement are fairly clear here. But I do thank you for your time and for your questions. Well, we thank you, Mr. Bogart and Mr. Fiorino. We're sorry not to be able to see you in video, but you sure gave a good argument nonetheless. We regret that we are unable to come down and thank you both for your time. Have a nice afternoon, and we will have a brief recess and then begin our five-minute recess and begin our third case. The Honorable Court will take a brief recess.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Henry F. Floyd